**EXHIBIT "A"**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| YVONNE BROWN, | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| vs. | ) |
| | ) FILE No. 4:18-cv-00274-HLM-wej |
| EAST PAULDING CENTER, LLC, | ) |
| Defendant. | ) |

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between YVONNE BROWN ("Plaintiff") and EAST PAULDING CENTER, LLC ("Defendant")(Plaintiff and Defendant shall be collectively referenced as the "Parties," and each a "Party"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on December 13, 2018, Plaintiff initiated the instant civil litigation (the "Action"), as styled above, for injunctive relief against Defendant based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") regarding real property located at 185 E. Paulding Drive, Dallas, Georgia 30157, Paulding County Property Appraiser's parcel number

1

106.1.2.049.0000 (the structure situated upon such real property shall be referenced as the "Facility," and the real property such structure is situated upon shall be referenced herein as the "Property"); and

**WHEREAS**, the Parties desire to compromise, and to fully and finally resolve all actual and potential claims that either may have against the other to avoid the uncertainty, time and expense that would accompany such litigation; and

**WHEREAS**, the Parties have agreed to enter into this Agreement, pursuant to which each and every claim and/or cause of action that has been asserted, or that could have been asserted, by Plaintiff against Defendant shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is acknowledged herein, the Parties agree as follows:

1. **Attorney's Fees and Costs**

    1.1 The Parties shall execute this Agreement and Plaintiff's Counsel, The Law Office of Craig J. Ehrlich, LLC, shall prepare a Joint Stipulation to Approve Consent Decree and Dismiss with Prejudice ("Joint Stipulation") to be distributed to all Parties for execution. Defendant agrees to pay to Plaintiff's Counsel, within fourteen (14) days of the entry by the Court of the Order Approving Consent Decree and Dismissal with Prejudice (the "Order"), attorney's fees and costs of

litigation in the amount of $4,000.00 (Four Thousand Dollars and No Cents). Said payment shall be made payable to "The Law Office of Craig J. Ehrlich, LLC IOLTA" and delivered to The Law Office of Craig J. Ehrlich, LLC, 1123 Zonolite Road, N.E., Suite 7-B, Atlanta, Georgia 30306.

1.2     Upon delivery of the fully executed Agreement to Plaintiff's Counsel, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and Dismiss with Prejudice, attaching a fully executed copy of this Agreement and a Proposed Order for the Court to the Stipulation.

1.3     Except as set forth herein, each Party shall be responsible for payment of her or its own litigation expenses, costs and attorneys' fees.

1.4     Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the payment of attorney's fees and costs as set forth herein. Plaintiff and Plaintiff's Counsel each acknowledge that Defendant has not made any representations regarding the tax consequences of any payment received pursuant to this Agreement.

1.5     The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

2.     **Alterations or Modifications to the Facilities**

2.1     The Parties acknowledge and stipulate that Defendant shall modify or

alter the items expressly identified by and in the manner specified in "Exhibit 1," attached hereto. The modifications identified in "Exhibit 1" shall be completed in all respects no later than twelve (12) months from the date of entry of an Order by the Court approving this Agreement (the "Completion Date"). The time period for completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as, but not limited to: (a) inability to obtain building or zoning permits, (b) failure of by any city, county or state inspectors to make inspections, (c) any city, county or state work on adjacent roadways or sidewalks that delay performance of this Agreement, and/or (d) any contractor defaults or work stoppages. In the event of any such unforeseen events, the time period for completion of the modifications identified in "Exhibit 1" shall be extended by the number of days reasonably attributable to said event(s), so long as Defendant provides prompt written notice of the same to Plaintiff's Counsel upon discovery of the event, and prior to the Completion Date.

2.2 Upon completion of modifications identified in "Exhibit 1," Defendant shall provide written notice of such completion to Plaintiff's Counsel.

2.3 If the modifications identified in "Exhibit 1" conflict with Georgia law, applicable building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendant shall attempt to identify and implement a reasonable

alternative solution or variance, should a readily achievable one exist. If Defendant intends to implement any such alternative solution, Defendant agrees to provide Plaintiff's Counsel with written notice of the same. It is a material provision of this Agreement that Plaintiff shall approve any alternative solution(s) prior to its (or their) implementation, and further, Plaintiff's approval of any alternative solution(s) proposed by Defendant shall not be unreasonably withheld.

2.4    The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the modifications identified in "Exhibit 1," or after the elapse of the twelve (12) month time period set forth in Paragraph 2.1, above, whichever is sooner, Plaintiff may inspect the Facility and Property to ensure that such completion has complied with "Exhibit 1." Defendant shall provide Plaintiff or Plaintiff's designated representative reasonable access to the Facility and Property to verify completion of the work described in "Exhibit 1."

2.5    If an inspection conducted pursuant to this Agreement reveals that any of the modifications identified in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall have the right to enforce this Agreement pursuant to Section 3, below.

2.6    It is agreed by the Parties that upon completion of all of the modifications identified in "Exhibit 1," the Facility and Property will be deemed fully compliant with the ADA and 2010 ADAAG pursuant to the readily achievable

standard.

3. **Enforcement Provisions**

If Plaintiff contends that an inspection conducted pursuant to Paragraph 2.4 of this Agreement reveals that any of the modifications identified in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall provide written notice of such alleged non-compliance to Defendant. Said notice shall identify the specific items that have not been completed in material compliance with "Exhibit 1," and shall provide an explanation of the alleged deficiency for each such item. Defendant shall have one hundred and twenty (120) days after receipt of such notice from Plaintiff to cure the alleged non-compliant modifications. If Defendant does not cure the alleged non-compliant alterations or modifications within said one hundred and twenty (120) days, Plaintiff shall have the right to move the Court to enforce this Agreement.

4. **Compromise**

The Parties agree and acknowledge that this Agreement is the result of a compromise and is not an admission of any liability, wrongdoing or responsibility by Defendant (as defined in paragraph 5.1 below). Defendant expressly denies any such liability, wrongdoing, or responsibility.

5. **Release Given By Plaintiff in Favor of Defendant**

5.1     In exchange for the good and valuable consideration set forth herein, Plaintiff and Plaintiff's respective agents, successors, assigns, and/or heirs (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendant, its agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, and all current and former tenants or lessees of the Facility and/or Property (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions or causes of action arising under Title III of the ADA and/or any other federal, state or local law that establishes policy or otherwise governs the accessibility of public accommodations for persons with disabilities, regardless of whether before any federal, state or local agency, court of law, or in any other forum, and further, of and from any and all claims that were alleged, or could have been alleged, in the Action regarding the Facility and/or Property (the "Released Claims"). This release also includes a fully and final release of all claims for attorney's fees, expert fees, costs of litigation, or any other fee or cost incurred with regard to the Action up to and including the date of entry of an Order by the Court approving this Agreement, with the exception of (a) the agreed-upon attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's

fees and costs resulting from any future action taken by either Party to enforce the terms of this Agreement.

    5.2    As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that Plaintiff is not aware of any pending tort, contract, or other legal claims against Defendant and/or the Released Parties other than the specific claims alleged in this Action.

    5.3    Plaintiff represents and warrants that no portion of the Released Claims, and no portion of any recovery or settlement to which Plaintiff might be entitled, have been assigned or otherwise transferred to any other person, firm, or entity that is not a Party to this Agreement.

**6.**     <u>**Notice**</u>

    6.1    Unless otherwise provided in this Agreement, or required by operation of law, all written notices required or permitted by this Agreement shall be delivered as follows:

<u>**To Plaintiff**</u>**:**

The Law Office of Craig J. Ehrlich, LLC
1123 Zonolite Road, N.E. Suite 7-B
Atlanta, Georgia 30306
Fax: (855) 415-2480
notice@ehrlichlawoffice.com

<u>**To Defendant:**</u>

Elizabeth Clack-Freeman, Esq.

> Andersen, Tate & Carr, P.C.
> One Sugarloaf Centre, Suite 4000
> 1960 Satellite Boulevard
> Duluth, Georgia 30097
> lcfreeman@atclawfirm.com

6.2     Written notice, as contemplated by this Agreement, may be made via FedEx, First Class U.S. Mail, facsimile or email at the election of the Party providing such notice.

6.3     Either Party may change its mailing address, email address(es) or facsimile number by giving prompt written notice of such change to the other Party.

**7.     Parties Represented/Free and Voluntary**

The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. Further, by affixing their respective signatures below, each Party affirmatively states that the terms of this Agreement have been read in their entirety, are fully understood, and freely and voluntarily accepted.

**8.     Miscellaneous Terms and Conditions**

8.1     This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with regard to the Action are hereby superseded and merged herein.

8.2     This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3     This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4     This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5     If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6     The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7　Plaintiff represents that, other than this Action, she has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on her behalf, she or it will use her or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8　The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9　In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10　The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

8.11　This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the state of Georgia.

[signatures appear on the following page]

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_/s/ Yvonne M Brown_
YVONNE BROWN

Date 2/18/2019

**"DEFENDANT"**

_____
EAST PAULDING CENTER, LLC

By: _____ (Print Name)

As its: _____ (Title)

Date _____

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
YVONNE BROWN

Date _____

**"DEFENDANT"**

*[signature]*
_____
EAST PAULDING CENTER, LLC

By: _____*[signature]*_____ Benjamin R. Smith (Print Name)

As its: __Authorized Signatory__ (Title)

Date __2/22/2019__

12

# EXHIBIT 1

1. The two accessible parking spaces on the Property and their associated adjacent access aisle will modified to remove the existing accessible ramp and its side flares from within the boundaries of said parking spaces and access aisle and replaced with curb cut ramp, in compliance with section 502.4 of the 2010 ADAAG standards. The newly installed curb cut ramp shall comply with the provisions of section 406 of the 2010 ADAAG standards.

2. The sales and service counters in the interior of the Facility will be modified as necessary to provide for an unobstructed forward reach of no more than 44 (forty-four) inches, in compliance with section 308.2.1 of the 2010 ADAAG standards.

3. All beverage dispensers in the Facility will modified to reduce their respective actionable mechanisms to a height not exceeding 44" (forty-four) inches from the finished floor, in compliance with section 308.3.1 of the 2010 ADAAG standards.

4. The soap dispensers in the restrooms of the Facility will be relocated within the prescribed vertical reach ranges set forth in section 308.2.1 of the 2010 ADAAG standards.